## In re Estate of BROWN.

[Cite as *In re Estate of Brown* (1992), 83 Ohio App.3d 540.]

Court of Appeals of Ohio,
Butler County.

No. CA92–05–094.

Decided Nov. 9, 1992.

*Imfeld, Imfeld & Imfeld* and *Bert C. Imfeld,* for the Estate of Mary Ruth Brown.

*Dinsmore & Shohl* and *Timothy A. Tepe,* for appellant Royse A. Brown.

*Per Curiam.*

Appellant, Royse A. Brown, appeals an order of the Butler County Court of Common Pleas, Probate Division, denying his application for an order authorizing payment of his attorney fees.

Mary Ruth Brown, appellant's mother, died on November 20, 1990. Her will was admitted to probate on December 11, 1990. With certain exceptions for tangible personal property, the will divided the estate in half, giving half in trust to appellant and the other half outright to appellant's sister, Stephanie Murphy.

Prior to her death, Mary Ruth Brown became ill and was placed in a nursing home. Murphy began assisting Mary Ruth Brown in her financial affairs and several joint and survivorship accounts in the names of Mary Ruth Brown and Murphy were set up at various banks. At the time of Mary Ruth Brown's death, these accounts totaled $276,614.92. Murphy conceded to the executor, Roy Halsey, that these accounts were set up for convenience only and therefore were assets of the probate estate to be divided under the will. Consequently, these accounts were included in the estate inventory as estate assets.

Halsey, who had been Mary Ruth Brown's accountant for many years, found no improprieties on Murphy's part in handling her mother's affairs. Appellant, however, made numerous requests for information on his mother's finances, apparently searching for self-dealing on Murphy's part. The matter eventually went to court when Murphy and the executor claimed the requests became too burdensome. Murphy became so infuriated at appellant's attacks on her that she hired her own attorney. On May 31, 1991, Murphy filed exceptions to the inventory, claiming that the joint and survivorship accounts in her and her mother's names were not probate assets and should not have been listed in the inventory.

Halsey and the attorney for the estate, Bert Imfeld, possessed information, including a letter from Mary Ruth Brown, indicating that the accounts were properly part of the estate. However, when approached by appellant's counsel to obtain a temporary restraining order, Imfeld refused, stating there were plenty of assets in the executor's hands to protect the estate. Imfeld told appellant's counsel that appellant "started this ruckus," and if appellant wanted to play games with Murphy's counsel to go ahead, because he (Imfeld) was not going to get involved in a fight appellant had started.

Consequently, appellant submitted interrogatories and a request for production of documents which Murphy refused to answer. Murphy moved for a protective order and appellant moved for an order to compel responses to the interrogatories and production of the requested documents. On August 21, 1991, the trial court granted appellant's motion to compel and overruled Murphy's motion for a

protective order. In August 1991, approximately three months after the exceptions were filed, Imfeld presented the letter Mary Ruth Brown had written to Murphy's counsel and to appellant's counsel. On September 23, 1991, Murphy withdrew her exceptions to the inventory.

On March 30, 1992, appellant filed an application for an order authorizing payment of attorney fees incurred "defending against the action by Stephanie Murphy to claim * * * estate assets * * *." An accompanying affidavit by his attorney indicated that attorney fees totaled $6,992.50. Imfeld, on behalf of Halsey, filed an affidavit in opposition. The trial court overruled appellant's application for attorney fees because the legal services were not for the "exclusive benefit of the estate." This appeal followed.

In his sole assignment of error, appellant states that the trial court erred in denying his application for payment of attorney fees. Appellant argues that the fees were expended solely to defend the estate against a claim which, if successful, would have deprived the estate of substantial assets. Appellant also claims that because the executor refused to defend against Murphy's claim, the burden of defense was placed upon him. We find this assignment of error to be well taken.

In rare cases, a probate court may authorize the payment of reasonable fees from the estate to an attorney employed by an heir or beneficiary where the attorney's services were rendered to the benefit of the whole estate. *In re Keller* (1989), 65 Ohio App.3d 650, 656, 584 N.E.2d 1312, 1316–1317. Compensation is based on "the equitable doctrine that where one has created, augmented, or preserved a fund he may be compensated therefrom." *In re Colosimo* (1957), 104 Ohio App. 342, 342–343, 5 O.O.2d 24, 25, 149 N.E.2d 31, 32. Where the beneficiary is reasonably justified in bringing suit, such as in cases where the attorney for the estate is for some reason unable or unwilling to seek the result obtained by the attorney seeking payment, fees are justified as long as they benefit the estate. *Keller, supra,* 65 Ohio App.3d at 658, 584 N.E.2d at 1318; *Pedler v. Pedler* (Apr. 15, 1981), Summit App. No. 9812, unreported. Attorney fees have been denied where heirs have been involved in efforts antagonistic to the interests of the estate and where heirs were serving their own particular interests and not the estate as a whole. *Kirkbride v. Hickok* (1951), 155 Ohio St. 165, 44 O.O. 153, 98 N.E.2d 4, syllabus; *Colosimo, supra,* 104 Ohio App. at 343, 5 O.O.2d at 25, 149 N.E.2d at 32; *In re Estate of McKitrick* (P.C.1960), 85 Ohio Law Abs. 323, 327–328, 15 O.O.2d 274, 275–276, 172 N.E.2d 197, 199–200.

In the present case, the trial court denied appellant's application for attorney fees because it concluded that the attorney's services were not for the *exclusive* benefit of the estate. This is not the correct standard. We find it hard

to envision a situation where an heir or beneficiary would go to the trouble and expense of hiring an attorney for the "exclusive" benefit of the estate. Few are so altruistic. The term "for the benefit of the estate" has been defined as " 'whether or not all of the beneficiaries or distributees of the estate, in their capacities as such, have become entitled to receive from the assets of the estate, when distributed, greater sums than those which they would have received had such attorney's services not been rendered * * *.' " *Keller, supra,* 65 Ohio App.3d at 657, 584 N.E.2d at 1318, quoting Annotation (1941), Allowance out of Decedent's Estate for Services Rendered by Attorney Not Employed by Executor or Administrator, 142 A.L.R. 1459, 1467.

Implicit in the trial court's conclusion that the services of appellant's attorney were not for the exclusive benefit of the estate is the finding that they did benefit the estate. This finding is supported by the record. Appellant's counsel defended against Murphy's exceptions to the inventory. Appellant's counsel's services were performed to preserve the estate's title to approximately $276,000 deposited in joint accounts that Murphy claimed belonged to her. These services resulted in the accounts remaining as estate assets, a result clearly beneficial to the estate. Obviously, as a practical matter, appellant sought to keep the accounts in the estate to increase his share under the will. Nevertheless, his actions were not solely for his own benefit, but served to increase the amount of funds available to all beneficiaries.

Further, appellant's action to defend against the exceptions would not have been necessary had the executor and his attorney taken immediate action. The executor and his attorney claim that the delivery of a letter from the decedent was all that was necessary to stop Murphy and to have her withdraw her exceptions. However, it is the view of this court that this delivery should have taken place immediately after the exceptions were filed, not several months later, and appellant was therefore justified in taking action to defend the estate. The executor argues that appellant's actions did not help the estate because it was the letter that eventually resolved the matter. Nevertheless, the trial court concluded that appellant's actions were beneficial to the estate and the claim that appellant's actions had absolutely no effect in causing Murphy to drop her exceptions is pure speculation. Accordingly, we hold that the trial court erred in denying appellant's application for attorney fees.

In their response to appellant's application for attorney fees, the executor and his attorney specifically stated that they did not dispute the time spent on the matter by appellant's attorney or the reasonableness of the fees. Therefore, there is no matter left in dispute and, pursuant to App.R. 12(B), this court enters the judgment the trial court should have entered. We hold that appellant is

entitled to have his attorney fees in the amount of $6,992.50 paid from the assets of the estate. Appellant's sole assignment of error is sustained.

The judgment of the trial court is reversed and this cause is remanded for further proceedings according to law and not inconsistent with this decision.

*Judgment reversed*
*and cause remanded.*

JONES, P.J., KOEHLER and WILLIAM W. YOUNG, JJ., concur.