In re ESTATE OF GEANANGEL.

Court of Appeals of Ohio,
Seventh District, Harrison County.

No. 00–525–CA.

Decided Feb. 25, 2002.

Mark Beetham, for appellant.

Tina A. Galigher Wallick, for appellee.

GENE DONOFRIO, Judge.

{¶ 1} Monty Geanangel, executor of the estate of Ruth M. Geanangel, deceased, appeals a decision of the Harrison County Common Pleas Court, Probate Division, removing him as executor of the estate and awarding attorney fees to Carole McCloy, a beneficiary who initiated the proceedings to have him removed as executor.

{¶ 2} Ruth M. Geanangel ("Ruth") died testate on November 7, 1998. She was survived by her three sons, Monty Geanangel ("Monty"), Ivan Frank Geanangel ("Ivan"), Skipper L. Geanangel ("Skipper"), and one daughter, Carole McCloy ("Carole"). Monty, who was designated as the executor of Ruth's estate in her will, Skipper, and Ivan made the funeral arrangements with Blackburn Funeral Home. When making the arrangements with Roy Blackburn ("Blackburn"), the funeral director, they insisted that it was their mother's wish that her body not be viewed in her casket by anyone. They entered into a contract with Blackburn for performance of the services for $3,897.

{¶ 3} Prior to the funeral, Carole contacted Blackburn and communicated her desire to see her mother's body. Fearing that the three sons would be angered if he allowed Carole to see her mother and not pay the bill, Blackburn acquiesced after Carole agreed to pay for the funeral services.

{¶ 4} On November 18, 1998, Ruth's will was admitted to probate. Her will devised her real estate to Ivan and Skipper, her jewelry to Carole, her automobile to a designee of the executor's choosing, and the residue to her four children. On December 14, 1998, Monty filed an inventory and appraisal indicating that the estate had assets totaling approximately $37,000.

{¶ 5} On March 8, 1999, Carole filed a claim with the estate seeking reimbursement for her payment of the funeral services. On November 30, 1999, Monty filed his first account of the receipts and disbursements he made in the administration of Ruth's estate.

{¶ 6} On January 13, 2000, Carole filed exceptions to the first account alleging, among other things, that Monty had failed to reimburse her for the funeral expenses. A hearing began on the matter on March 3, 2000. During the hearing, the court indicated that Carole should be reimbursed for the funeral expenses. However, due to limited time, a full and complete hearing could not be held on the matter.

{¶ 7} In the meantime, Blackburn entered into an agreement with Monty, Ivan, and Skipper. Under the agreement, Blackburn agreed to refund the money Carole paid for the funeral services to Carole in the form of a check. Blackburn was to receive no payment for the services rendered in exchange for Monty, Ivan, and Skipper's agreement not to pursue further legal actions against Blackburn and to cease public criticism of Blackburn's handling of the matter. However, because Monty, Ivan, and Skipper allegedly continued to talk publicly about the matter, Blackburn stopped payment on the check to Carole.

{¶ 8} On June 15, 2000, Carole filed a motion for contempt and removal of the executor alleging that Monty had violated a court order by his failing to reimburse her for the funeral expenses. Carole also filed a motion to amend her exceptions to the first account and requested attorney fees.

{¶ 9} On August 7, 2000, the court held a hearing on Carole's motion and took additional testimony. On August 8, 2000, the court filed a judgment entry denying the motion for contempt but granting the motion to remove Monty as executor for his failure to reimburse Carole for the funeral expenses. The court also granted Carole's motion for attorney fees in the amount of $3,460. The court deferred the issue of Carole's exceptions to the account until the parties fully briefed the matter. Monty appealed the court's decision, setting forth two assignments of error.

{¶ 10} As an initial matter, Carole raises the issue of whether the trial court's August 8, 2000 order is a final appealable order. Section 3(B)(2), Article IV of the Ohio Constitution governs the limited subject matter jurisdiction of Ohio appellate courts, specifically providing in part: "Courts of appeals shall have such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district * * *."

{¶ 11} If an order is not a final appealable order, then an appellate court has no jurisdiction to review the matter and the appeal must be dismissed. *Davison v. Rini* (1996), 115 Ohio App.3d 688, 692, 686 N.E.2d 278. Moreover, in the event that this jurisdictional issue is not raised by the parties involved with the appeal, then this court is required to raise it on its own motion. *Id.*

{¶ 12} R.C. 2505.02 sets forth five categories of final orders:

{¶ 13} "(B) An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:

{¶ 14} "(1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment;

{¶ 15} "(2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment;

{¶ 16} "(3) An order that vacates or sets aside a judgment or grants a new trial;

{¶ 17} "(4) An order that grants or denies a provisional remedy and to which both of the following apply:

{¶ 18} "(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.

{¶ 19} "(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

{¶ 20} "(5) An order that determines that an action may or may not be maintained as a class action."

{¶ 21} Only R.C. 2505.02(B)(2) and (4) have any possible application to an order granting or denying a motion to remove an executor of an estate. This court has never directly taken up the issue and, admittedly, there is a division in the districts on whether such an order constitutes a final appealable order.

{¶ 22} Regarding R.C. 2505.02(B)(2), a special proceeding is "an action or proceeding that is specially created by statute and that prior to 1853 was not denoted as an action at law or a suit in equity." R.C. 2505.02(A)(2). The Tenth District in *In re Estate of Nardiello* (Oct. 30, 2001), Franklin App. No. 01AP–281, 2001-Ohio-4080, 2001 WL 1327178 at * 3, observed:

{¶ 23} "Some Ohio courts have held that probate estate administration proceedings are not 'special proceedings' within the meaning of R.C. 2505.02(A)(2) because such proceedings existed at common law: *In re Estate of Pulford* (1997), 122 Ohio App.3d 88 [701 N.E.2d 55]; *In re Estate of Endslow* (Apr. 12, 2000), Delaware App. No. 99CA–F–07–37, unreported [2000 WL 502818]; *In re Estate of Packo* (Feb. 15, 2000), Lucas App. No. L–99–1350, unreported [2000 WL 191784]; *In re Estate of Adams* (Dec. 30, 1999), Ottawa App. No. OT–98–047, unreported [1999 WL 1262074]. However, other courts have provided equal authority to the contrary, holding that probate proceedings are 'special proceedings' for purposes of R.C. 2505.02, and, assuming that the order being appealed affects a substantial right, judgments of the probate court will be considered final

and appealable. *In re Myers* (1995), 107 Ohio App.3d 489 [669 N.E.2d 53]; *In re Estate of Nussbaum* (July 21, 2000), Hamilton App. No. C–990527, unreported [2000 WL 1005201]; *In re Estate of Lilley* (Dec. 20, 1999), Warren App. No. CA99–07–083, unreported [1999 WL 1239470]; *In re Estate of Knauff* (May 27, 1997), Adams App. No. 96CA623, unreported [1997 WL 305232]. Removal of a fiduciary has specifically been found appealable under this reasoning. *In re Estate of Price* (Oct. 26, 1995), Cuyahoga App. No. 68628, unreported [1995 WL 628344]; *In re Estate of Petrosky* (Nov. 17, 1987), Greene App. No. 87 CA 10, unreported [1987 WL 20259]; and *In re Putka* (Mar. 1, 2001), Cuyahoga App. No. 77986, unreported [2001 WL 210027]."

{¶ 24} This division was also noted by the Sixth District in *In re Estate of Gannett* (Nov. 27, 2001), Huron App. No. H–01–047, 2001 WL 1518035, at * 3:

{¶ 25} "As stated above, the order being appealed in this case could also conceivably be final pursuant to R.C. 2505.02(B)(4) [*sic*], the 'special proceeding' portion of the statute. In *In the Matter of the Estate of John G. Packo* (Feb. 15, 2000), Lucas App. No. L–99–1350, unreported [2000 WL 191784], this court held that probate estate proceedings existed at common law and therefore they are not 'special proceedings' as that term is used in R.C. 2505.02(A)(2), which defines 'special proceedings' as 'an action or proceeding that is specially created by statute and that prior to 1853 was not denoted as an action at law or a suit in equity.' *Packo* at 4–5. See, also, *In the Matter of Estate of Garnett B. Adams* (Dec. 30, 1999), Ottawa App. No. OT–98–047, unreported [1999 WL 1262074]; and *In the Matter of the Estate of James R. Bloom* (June 21, 2000), Huron App. No. H–00–020. In each of these three cases, *Adams, Packo,* and *Bloom,* this court certified a conflict between this court's holding and the holding of the Adams County Court of Appeals in *Estate of Knauff* (May 27, 1997), Adams App. No. 96CA623, unreported [1997 WL 305232], on the issue of whether probate estate proceedings are 'special proceedings.' In *Packo* and *Adams,* despite our certification of a conflict, no action was taken by any party pursuant to S.Ct.Prac.R. IV(1), so the conflict was not addressed by the Supreme Court in either of those cases. In *Bloom,* the Supreme Court of Ohio determined that a conflict exists on the question of whether probate estate proceedings are 'special proceedings' as that term is defined in R.C. 2505.02(A)(2). However, the appellant in *Bloom* filed an application for a dismissal of the appeal in the Supreme Court, which was granted. Thus, the certified issue has not been decided by the Supreme Court.

{¶ 26} "Since our decision in *Packo,* three other appellate district courts have addressed the issue of whether estate proceedings are 'special proceedings' pursuant to R.C. 2505.02(A)(2). See *In re Estate of Endslow* (Apr. 12, 2000), Delaware App. No. 99CA–F–07–37, unreported [2000 WL 502818], from the Fifth District Court of Appeals, ('Probate estate administration proceeding existed at

common law and, therefore, are not special proceedings as defined in R.C. 2505.02(A)(2).'); *In re Estate of Nussbaum* (July 21, 2000), Hamilton App. No. C–990527, unreported [2000 WL 1005201], from the First District Court of Appeals ('an order arising out of an action instituted upon an application to probate a will constitute[s] an "order * * * made in a special proceeding," because the underlying action was a statutory creation that was not recognized at common law or in equity.'); and *In re Estate of Nardiello* [ (Oct. 30, 2001), Franklin App. No. 01AP–281, unreported, 2001 WL 1327178] * * *."[1]

{¶ 27}  Given the division of authorities on the issue of whether such an order arises out of a "special proceeding," the Tenth District turned to the remaining applicable provision, R.C. 2505.02(B)(4), to conclude that such an order is a final appealable order.  We agree with this approach and the reasoning behind it.  In *In re Estate of Nardiello*, 2001-Ohio-4080, 2001 WL 1327178, the court stated:

{¶ 28}  "The provisions of R.C. 2505.02(B)(4) specify that an order granting a provisional remedy shall be appealable if it (A) determines the action with respect to that provisional remedy and prevents a judgment in the action in the favor of the appealing party with respect to the remedy, and (B) the appealing party would not be afforded 'a meaningful or effective remedy by an appeal' following a final judgment in the action as a whole.  The removal of an executor, we find, falls within this category of provisional remedies for which no meaningful or effective remedy could be granted upon an appeal by an executor following final resolution of the estate, since there would no longer be any opportunity for the executor to undertake his duties and functions as executor.  It is therefore on the basis of R.C. 2505.02(B)(4) that we conclude that the removal of appellant as executor in the present case constitutes a final appealable order from which appellant may appeal."[2]

{¶ 29}  Accordingly, we hold that an order granting or denying a motion to remove an executor of an estate is a final appealable order under R.C. 2505.02(B)(4).

{¶ 30}  Turning to the merits of Monty's appeal, his first assignment of error states:

{¶ 31}  "The Probate Division of the Common Pleas Court of Harrison County, Ohio, erred when the trial court removed Monty Geanangel as executor of the

1.  The court went on to certify a conflict on the issue of whether probate proceedings are 'special proceedings' as that term is defined in R.C. 2505.02(A)(2).

2.  The Sixth District has disagreed with the Tenth's District decision in *Nardiello* and has certified the issue to the Ohio Supreme Court.  See *In re Estate of Gannett,* 2001 WL 1518035. [Reporter's Note: No appeal was taken.]

estate of his late mother, Ruth M. Geanangel, for alleged '.... failure to perform duty to reimburse payor for funeral bill as a priority expense of estate,' where the claimant was not the funeral director, the executor had neither accepted or rejected the claim, the claimant had not demanded acceptance of the claim, the claimant had no right to file suit for judgment on the claim, there was no judgment granting the claim, the claim arose from 'officious or meddlesome conduct' and the claim was disputed in good faith."

{¶ 32} R.C. 2109.24 provides that the probate court may remove a fiduciary "for habitual drunkenness, neglect of duty, incompetency, or fraudulent conduct, because the interest of the trust demands it, or for any other cause authorized by law." Removal of a fiduciary is discretionary with the probate court, and an order removing a fiduciary will not be overturned on appeal absent a clear showing of an abuse of discretion. *In re Estate of Russolillo* (1990), 69 Ohio App.3d 448, 450, 590 N.E.2d 1324. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. Id.

{¶ 33} Monty argues that Carole did not follow the proper procedure in pursuing her claim. Monty also argues that even if Carole had a claim against the estate he was justified in not paying it because of her meddlesome conduct.

{¶ 34} Obligations incurred after the death of the deceased for the benefit of the decedent's estate are considered debts of the estate. A creditor seeking repayment of such a debt must file a claim with the executor of the decedent's estate. R.C. 2117.06(A). If the executor neither accepts nor rejects the claim, the creditor can compel action by the executor by filing a demand pursuant to R.C. 2117.11. R.C. 2117.11 provides:

{¶ 35} "A claim is rejected if the executor or administrator, on demand in writing by the claimant for an allowance thereof within five days, which demand may be made at presentation or at any time thereafter, fails to give to the claimant, within such period, a written statement of the allowance of such claim. Such rejection shall become effective at the expiration of such period."

{¶ 36} In addition, R.C. 2117.12 provides:

{¶ 37} "When a claim against an estate has been rejected in whole or in part but not referred to referees, or when a claim has been allowed in whole or in part and thereafter rejected, the claimant must commence an action on the claim, or that part thereof rejected, within two months after such rejection if the debt or that part thereof rejected is then due, or within two months after the same becomes due, or be forever barred from maintaining an action thereon."

{¶ 38} Because Monty neither accepted nor rejected Carole's claim and she never filed a demand in writing pursuant to the aforementioned provisions, Monty argues that he had no duty to pay her.

{¶ 39} Monty's argument in this regard is without merit for two reasons. First, certain pleadings filed by Carole put Monty on notice of her demand for payment. On January 13, 2000, Carole filed exceptions to the first account alleging, among other things, that Monty had failed to reimburse her for the funeral expenses. Again on June 15, 2000, Carole pointed to Monty's failure to reimburse her as the basis for her motion for contempt and removal of the executor. Given the modest size of the estate and the relatively few parties involved, Carole's pleadings could be fairly construed as a demand contemplated by R.C. 2117.11.

{¶ 40} Second, other provisions of the Revised Code equally support the proposition that Monty was obligated to take some action on Carole's claim once it was filed. R.C. 2117.06(D) states:

{¶ 41} "In the absence of any prior demand for allowance, the executor or administrator shall allow or reject all claims, except tax assessment claims, within thirty days after their presentation, provided that failure of the executor or administrator to allow or reject within that time shall not prevent him from doing so after that time and shall not prejudice the rights of any claimant. Upon the allowance of a claim, the executor or the administrator, on demand of the creditor, shall furnish the creditor with a written statement or memorandum of the fact and date of such allowance."

{¶ 42} Additionally, R.C. 2117.06(H) states: "Any person whose claim has been presented, and not thereafter rejected, is a creditor as that term is used in Chapters 2113. to 2125. of the Revised Code."

{¶ 43} Monty also argues that Carole's conduct was a valid defense to any duty to reimburse her for the funeral expenses.

{¶ 44} A claim submitted by a funeral director against the estate for payment of funeral and burial expenses is given a high priority for payment. R.C. 2117.25. When the bill is paid by a third person, however, the same priority does not apply. Still, "[i]t has long been the law of Ohio that a person other than a surviving spouse who pays the deceased's funeral expenses, not as an officious volunteer or meddler but out of the necessity of the occasion, is entitled to reimbursement from the estate of the deceased, provided the bill is reasonable." *Osborne v. Osborne* (1996), 114 Ohio App.3d 412, 415, 683 N.E.2d 365.

{¶ 45} Monty argues that Carole's conduct was officious and meddlesome because it contravened what he alleges was Ruth's desire that she not be viewed

in her coffin by anyone. The trial court's implicit conclusion to the contrary was not an abuse of discretion. As the court observed and reasoned:

{¶ 46} "So, I can understand perhaps your feelings here but, you know, I'm not so sure that you understood what your mother meant about a closed coffin. I think the average person on the street would say a closed coffin means that when you have a service for me when I'm deceased I don't want the public who comes to pay their last respects to have an open coffin. I want a closed coffin for that. That doesn't necessarily extend to the fact that my daughter or my sons cannot view me after my body after I'm dead, so I don't know whether, you know, that's what the ordinary person would read from that, I would think, closed coffin."

{¶ 47} Additionally, further evidence demonstrated the propriety of Blackburn's actions. He testified that before allowing Carole to see Ruth's body he called the Ohio Funeral Directors' Association and the National Funeral Directors' attorney. Both advised him that he could not refuse to allow her to see the body.

{¶ 48} In sum, the trial court did not abuse its discretion in removing Monty as executor for his failure to reimburse Carole for the funeral expenses. Accordingly, Monty's first assignment of error is without merit.

{¶ 49} Monty's second assignment of error states:

{¶ 50} "The Probate Division of the Common Pleas Court of Harrison County, Ohio, erred when the court granted attorney's fees to claimant Carole McCloy where, as here, there is no statutory authority for the allowance of such fees, claimant has not properly filed her claim, there is no judgment allowing the claim, and there is no competent testimony of the value of the services purportedly provided for the benefit of the estate."

{¶ 51} Monty argues that there is no statutory or other authority for awarding attorney fees in a case like this. Also, Monty also argues that there was no evidence of the value of the services, whether the services were reasonable, or whether the services in any way benefited the estate.

{¶ 52} R.C. 2113.36 provides, "When an attorney has been employed in the administration of the estate, reasonable attorney fees paid by the executor or administrator shall be allowed as a part of the expenses of administration."

{¶ 53} The payment of reasonable attorney fees lies within the sound discretion of the probate court. *In re Estate of Fugate* (1993), 86 Ohio App.3d 293, 298, 620 N.E.2d 966. "Reasonable attorney fees must be based upon the actual services performed by the attorneys and upon the reasonable value of those services as determined from the evidence which must substantiate the

award of fees as being reasonable." (Internal quotation marks and citation omitted.) *In re Keller* (1989), 65 Ohio App.3d 650, 655, 584 N.E.2d 1312.

{¶ 54} In *Keller,* the court decided the issue of whether an Ohio probate court may authorize the payment of attorney fees to one who was not employed by the executor or administrator of the estate. The court stated:

{¶ 55} "While a cursory glance at R.C. 2113.36 may lead one to conclude that the court can authorize payment only to attorneys 'paid by the executor or administrator,' equity and common sense militate toward a slightly broader interpretation in cases of this sort. We hold that, in unusual circumstances such as those presented in the instant case, a probate court may allow payment of reasonable fees from the estate to an attorney employed by an heir or beneficiary where such attorney's services were necessarily and successfully rendered to the benefit of the whole estate."[3] Id. at 656, 584 N.E.2d 1312. See, also, *Fugate,* supra; *In re Estate of Brown* (1992), 83 Ohio App.3d 540, 542, 615 N.E.2d 319.

{¶ 56} The court cited with favor a Missouri appellate court case. In that case, it was noted that an award of attorney fees would be appropriate where a beneficiary brought an action for an accounting from and removal of a personal representative so long as the action was successful and the result was beneficial to the estate. 65 Ohio App.3d at 657, 584 N.E.2d 1312. The court also noted that its "holding is especially applicable to situations in which the diligence or fidelity of the estate's fiduciary is suspect." Id. at 658, 584 N.E.2d 1312.

{¶ 57} Given an authoritative basis for an award of attorney fees in this case, the only remaining question is whether those fees were reasonable and supported by the evidence. In this regard, Carole testified to the fees she incurred in pursuing the action and submitted detailed billing statements in support. Those statements corroborated her testimony and demonstrated that the fees were reasonable and were incurred in furtherance of the action.

{¶ 58} Accordingly, Monty's second assignment of error is without merit.

{¶ 59} The judgment of the trial court is hereby affirmed.

Judgment affirmed.

VUKOVICH and DEGENARO, JJ., concur.

---

**3.** Citing a 1928 case, 33 Ohio Jurisprudence 3d (1997) 303–304, Decedent's Estates, Section 1371, also notes that "[r]easonable attorney fees may also be allowed for services rendered in behalf of a creditor in an action against the executor of an estate for concealing, embezzling, and conveying away assets, and for prosecuting exceptions to the inventory."