## In re ESTATE OF PULFORD.

[Cite as *In re Estate of Pulford* (1997), 122 Ohio App.3d 88.]

Court of Appeals of Ohio,
Eleventh District, Geauga County.

No. 96–G–2001.

Decided July 28, 1997.

*Kenneth C. Podor*, for appellant, Adrea Bontrager.

*William C. Hofstetter*, for appellee, Administrator William C. Hofstetter.

FORD, Presiding Judge.

This is an accelerated appeal from the Geauga County Court of Common Pleas, Probate Division. Appellant, Adrea Bontrager, appeals from an order overruling her application to administer the estate of her minor son, Kevin Pulford.[1]

On January 29, 1996, decedent, approximately three months of age, was traveling with his mother and grandmother in an automobile. Decedent was in a child restraint seat and began to cry. Appellant removed decedent from the child restraint seat and held him in her lap. The vehicle was then involved in an accident that killed decedent, who died intestate.

On March 28, 1996, appellant filed her application for authority to administer decedent's estate. In a motion filed on May 21, 1996, Ashley Pulford, the purported father of decedent, objected to appellant's appointment as administrator of decedent's estate.[2] In a judgment entry dated July 24, 1996, the trial court overruled appellant's application to administer the estate because she had potential conflicts of interest that precluded her from being a qualified applicant. The court appointed William C. Hofstetter to serve as the administrator of decedent's estate. Appellant timely appealed from this judgment entry, and asserts the following assignments of error:

"[1.] The probate court erred to the prejudice of appellant Adrea Bontrager in determining that a potential conflict of interest existed which would preclude appellant from being appointed the administrator of decedent's estate.

---

**1.** The companion case to the instant appeal, *In re Pulford* (1997), 122 Ohio App.3d 92, 701 N.E.2d 58, involved the putative father's request to share in proceeds from the wrongful death action.

**2.** Ashley Pulford moved the court to remove appellant as administrator, but the probate court treated this motion as an objection to the appointment because appellant was never appointed administrator.

"[2.] The probate court erred in denying appellant's oral motion to dismiss and strike Ashley Pulford's objection to the application of appellant, Adrea Bontrager, to be appointed administrator of decedent's estate."

For the reasons discussed below, we conclude that the order is not final and appealable, and thus dismiss appellant's appeal. R.C. 2505.02 provides that "an order that affects a substantial right made in a special proceeding" is a final appealable order. The Supreme Court of Ohio has held:

"Orders that are entered in actions that were recognized at common law or in equity and were not specially created by statute are not orders entered in special proceedings pursuant to R.C. 2505.02." *Polikoff v. Adam* (1994), 67 Ohio St.3d 100, 616 N.E.2d 213, syllabus.

In an attempt to clarify the *Polikoff* syllabus, the Supreme Court of Ohio has stated that "[u]nder *Polikoff,* it is the underlying *action* that must be examined to determine whether an order was entered in a special proceeding." (Emphasis *sic.*) *Walters v. The Enrichment Ctr. of Wishing Well, Inc.* (1997), 78 Ohio St.3d 118, 121–122, 676 N.E.2d 890, 893.

Thus, our inquiry here is whether the procedure of applying for authority to administer a decedent's estate was recognized at common law or in equity. When the specter of the issue of a final appealable order has raised its "ugly head" in a given case in recent years, our Supreme Court, when addressing the question, has provided the legal community of Ohio with a poignant pendulum of vacillation that leaves this writer utterly and confoundedly confused. The *Polikoff* standard initially appears to be quite precise and facile, until one embarks on the odyssey of discovering what actions were recognized at "common law." This next juncture involves a determination of what the common law was on the subject at hand. Ah, there is the rub! One can achieve remarkably different results depending on the syllogistic approach employed in the bedrock definition adopted regarding the common law on a given question. For example, this writer does not entirely agree with the historical rendition of the common law offered in *State ex rel. Papp v. James* (1994), 69 Ohio St.3d 373, 632 N.E.2d 889.

Although the concept of "the common law" appears at times to be an amorphous monolith incapable of precise definition, students of the law have frequently been required to determine acceptable conclusory statements indicating what the common law was and/or is. We find ourselves in that position here, and will undertake our best effort to comport with historical accuracy. The analytical exercise usually involves reliance on a certain recognized commentator or commentators on the subject, or a reference to an acceptable lexicon. One such source states that "[t]he 'common law' is *all* the statutory and case law background of England and the American colonies before the American revolution."

(Emphasis added.) Black's Law Dictionary (6 Ed.1990) 276. The Supreme Court of the United States has stated that Blackstone's Commentaries is the most reliable source on the common law of England. *Schick v. United States* (1904), 195 U.S. 65, 69, 24 S.Ct. 826, 827, 49 L.Ed. 99, 102. Concerning the appointment of the administrator of an estate, Blackstone's Commentaries on the Law (Gavit Ed.1941) 506 states:

"To take the administration to the estate out of the hands of the ordinary or his immediate dependents, the statute of Edward III provides that, in case of intestacy, the ordinary shall depute the nearest and most lawful friends of the deceased to administer his goods, who shall be put on the same footing, with regard to suits and accounting, as executors under a will. Administrators hence were only the officers of the ordinary, appointed by him, being the next lawful friend of the deceased, who is interpreted to be the next of blood, that is, under no legal disabilities. A later statute permitted the ecclesiastical judge to grant administration either to the widow or next of kin, or to both of them, at his own discretion, and where two persons are in the same degree of kindred, gives the ordinary his election to appoint either."

Although some aspects of estate administration were within the jurisdiction of the ecclesiastical courts of England, some of the issues were resolved in that country's common-law courts. A leading text has stated:

"Jurisdiction over decedents' estates was divided between the common law courts and the ecclesiastical courts. The common law courts, a part of the royal judicial system, decided cases involving the distribution and use of real property. The ecclesiastical courts, a part of the judicial system of the Roman Catholic Church, decided cases involving the distribution and use of personal property. * * *" (Footnote omitted.) Ritchie, Alford, Effland & Dobris, Cases and Materials on Decedents' Estates and Trusts (1993) 6. See, also, Simes & Basye, The Organization of the Probate Court in America: I (1944), 42 Mich.L.Rev. 965, 968; Atkinson, The Development of the Massachusetts Probate System (1943), 42 Mich.L.Rev. 425.

Those aspects of estate administration not within the jurisdiction of the ecclesiastical courts were within the authority of either the common-law courts or the chancery courts. Simes at 967. Thus, the administration of estates was not conducted solely in ecclesiastical courts, but rather occurred in both the common-law courts and courts of equity in England. Therefore, to declare that estate administration is not a part of the English common law would require an erroneously narrow definition of the common law. Consequently, the administration of decedents' estates was recognized at common law and in equity.

Therefore, the procedure for appointment of an administrator is not a special proceeding under the *Polikoff* definition. Accordingly, this appeal does not emanate from a final appealable order.

Therefore, for the foregoing reasons, appellant's appeal is dismissed.

*Appeal dismissed.*

CHRISTLEY and NADER, JJ., concur.