DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Scioto County Common Pleas Court, Probate Division, summary judgment in favor of Margaret Blackburn, Administrator of the Estate of John Short, Deceased, plaintiff below and appellee herein, on her various claims for concealment or embezzlement of estate assets.
 {¶ 2} Jeanne L. Ward and Patricia Groves, defendants below and appellants herein, assign the following errors for review and determination:
FIRST ASSIGNMENT OF ERROR:
"THE COURT ERRED IN GRANTING SUMMARY JUDGMENT TO THE PLAINTIFF-APPELLEE WHEN THERE WERE GENUINE ISSUES IN DISPUTE AS TO MATERIAL FACTS."
SECOND ASSIGNMENT OF ERROR:
"THE COURT ERRED IN GRANTING SUMMARY JUDGMENT TO PLAINTIFF-APPELLEE AS PLAINTIFF-APPELLEE WAS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW."
 {¶ 3} John Short lived with his sister, Margaret Blackburn, for the last thirty to forty years of his life. Short apparently never married or produced offspring. In June 2000, Short suffered a mini-stroke and his health began to deteriorate. On September 20, 2000, several days before his scheduled carotid artery surgery, his great-niece Jeanne Ward (Margaret Blackburn's granddaughter) brought him forms to sign to include her name on his Fifth Third Bank checking account.[1] Short signed the forms.[2]
 {¶ 4} After surgery, Short's health continued to deteriorate. On October 27, 2000, Jeanne Ward brought to him a power of attorney form. Short signed the form which was witnessed, notarized and eventually recorded. Jeanne Ward then prepared a deed to transfer a farm that Short owned to her mother, Patricia Groves. Jeanne Ward executed that deed as her great-uncle's attorney-in-fact on November 17, 2000 and then placed the instrument in a locked drawer.
 {¶ 5} Short died on December 1, 2000. Three days later, Jeanne Ward withdrew $28,000 from Short's Fifth Third Bank account. On December 15, 2000, Ward withdrew another $10,800 from the same account.[3] On December 22, 2000, Ward recorded the deed that ostensibly transferred his farm to her mother.
 {¶ 6} On February 5, 2001, Margaret Blackburn filed an application to administer her brother's estate.[4] The Probate Court approved her application and appointed her estate administrator.[5] On March 12, 2001, Blackburn filed the instant complaint and alleged that her grand-daughter, Jeanne Ward, breached a fiduciary duty to the decedent under the power of attorney by transferring property to her mother. Additionally, Blackburn alleged that Jeanne Ward, Patricia Groves (Jeanne's mother) and Robert Groves (Jeanne's brother) possessed estate assets including the farm, monies withdrawn from the decedent's bank accounts and various items of personal property. She asked the court to, inter alia, void the transfer of the farm and order the return of the estate assets. Jeanne Ward and Patricia Groves denied liability.[6]
 {¶ 7} On April 30, 2002, Jeanne Ward and Patricia Groves filed a motion for summary judgment and argued that no genuine issues of material fact exist in this case and that they were entitled to judgment in their favor as a matter of law.[7]
Specifically, they argued that (1) deposition testimony showed a validly executed power of attorney, and (2) the decedent indicated a donative intent to make gifts of his farm, money and personal property to Jeanne Ward and her family and that Jeanne, as his attorney-in-fact, simply carried out his wishes.
 {¶ 8} Margaret Blackburn filed a motion for summary judgment on May 1, 2002 and argued, as administrator of the estate, that she was entitled to judgment as a matter of law. In particular, she argued that Jeanne Ward had no authority to make gifts under the power of attorney and, even if she did have authority, she breached a fiduciary duty by making those gifts to herself and to her family. Further, with regard to the transfer of the decedent's farm the deed was not recorded and delivered until after the grantee's death and Jeanne Ward no longer possessed the authority to make such a gift even if the power of attorney had permitted it.
 {¶ 9} The Probate Court found that (1) the decedent's power of attorney was a general power of attorney that did not confer on the attorney-in-fact the power to make gifts, and (2) regardless of whether she had the authority, any agency relationship between the decedent and Jeanne Ward terminated at his death. Consequently, this fact negated Jeanne Ward's subsequent attempt to complete the gift of the farm by recording the deed and delivering it to her mother. It also negated her attempt to make a gift of decedent's monies by withdrawing them from his bank account and giving them to herself and to her mother. With regard to the ownership of a tractor and bush hog in Jeanne Ward's possession, the court determined that these items were also estate assets.
 {¶ 10} Accordingly, the Probate Court concluded that the deed that transferred the farm to Patricia Groves was null and void and further ordered Jeanne Ward, Patricia Groves and Robert Groves to return $39,404.22, as well as the tractor and bush hog, to the estate. This appeal followed.
 I {¶ 11} Before we review the merits of the assignments of error, we must first resolve a threshold jurisdictional issue. Ohio courts of appeals only have appellate jurisdiction over final orders. Section 3(B)(2), Article IV, Ohio Constitution. A final, order is one which, inter alia, affects a substantial right and is made in a special proceeding. R.C.2505.02(B)(2).[8] If a judgment does not meet the requirements of R.C. 2505.02, an appellate court does not have jurisdiction to review it and the appeal must be dismissed. See e.g. Prod. Credit Assn. v. Hedges (1993), 87 Ohio App.3d 207,210, 621 N.E.2d 1360 at fn. 2; Kouns v. Pemberton
(1992), 84 Ohio App.3d 499, 501, 617 N.E.2d 701.
 {¶ 12} There is no question that appellants' possessory and ownership interests in the "gifts" from decedent are "substantial rights." The question is whether the June 28, 2005 judgmentaffected those rights. An order affects a substantial right if it is one which, if not immediately appealable, would foreclose appropriate relief in the future. Bell v. Mt. SinaiMed. Ctr. (1993), 67 Ohio St.3d 60, 63, 616 N.E.2d 181. To show that an order affects a substantial right, it must be clear that, in the absence of immediate review, an appellant will be denied effective future relief. See Konold v. R.W. Sturge, Ltd.
(1996), 108 Ohio App.3d 309, 311, 670 N.E.2d 574; Rhynehardt v.Sears Logistics Services (1995), 103 Ohio App.3d 327, 330,659 N.E.2d 375; Kelm v. Kelm (1994), 93 Ohio App.3d 686, 691,639 N.E.2d 842. It is not sufficient that an order restricts or limits that right. Rather, there must be virtually no future opportunity to provide relief from the allegedly prejudicial order. State v. Chalender (1994), 99 Ohio App.3d 4, 6-7,649 N.E.2d 1254.
 {¶ 13} While proceedings remain to be conducted in the administration of this estate, and appellants could theoretically appeal the Probate Court's judgment once those proceedings are concluded, we nevertheless find that they would be denied effective future relief if not permitted to appeal the judgment at this time. Once the farm and personal property are returned to the estate, the administrator could easily liquidate those assets. Thus, appellants would be unable to recover the assets if they prevailed in a future appeal. For that reason, we conclude that the June 28, 2005 judgment affects a substantial right and was made in a special proceeding such that we have jurisdiction to review it. With that in mind, we now turn to the merits of the appeal.
 II {¶ 14} This is an appeal from a summary judgment and appellate courts review summary judgments de novo. Broadnax v.Greene Credit Service (1997), 118 Ohio App.3d 881, 887,694 N.E.2d 167; Coventry Twp. v. Ecker (1995), 101 Ohio App.3d 38,41, 654 N.E.2d 1327; Maust v. Bank One Columbus, N.A. (1992),83 Ohio App.3d 103, 107, 614 N.E.2d 765. In other words, we afford no deference to a trial court's decision, Hicks v.Leffler (1997), 119 Ohio App.3d 424, 427, 695 N.E.2d 777;Dillon v. Med. Ctr. Hosp. (1993), 98 Ohio App.3d 510, 514-515,648 N.E.2d 1375; Morehead v. Conley (1991), 75 Ohio App.3d 409,411-412, 599 N.E.2d 786, and conduct our independent review to determine if summary judgment was appropriate. Woods v. Dutta
(1997), 119 Ohio App.3d 228, 233-234, 695 N.E.2d 18; Phillips v.Rayburn (1996), 113 Ohio App.3d 374, 377, 680 N.E.2d 1279;McGee v. Goodyear Atomic Corp. (1995), 103 Ohio App.3d 236,241, 659 N.E.2d 317.
 {¶ 15} Summary judgment under Civ.R. 56(C) is appropriate when, after the evidence is construed most strongly in the non-moving party's favor, the movant can show that (1) no genuine issues of material fact exist, (2) she is entitled to judgment in her favor as a matter of law and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party. Zivich v. Mentor Soccer Club, Inc. (1998),82 Ohio St.3d 367, 369-370, 696 N.E.2d 201; Mootispaw v. Eckstein
(1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197; Harless v.Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66,375 N.E.2d 46. We further note that the moving party bears the initial burden to show that no genuine issue of material fact exist and that he is entitled to judgment as a matter of law.Vahila v. Hall (1997), 77 Ohio St.3d 421, 429, 674 N.E.2d 1164;Dresher v. Burt (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264;Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 115,526 N.E.2d 798. Once that burden is satisfied, the onus shifts to the non-moving party to provide rebuttal evidentiary materials. SeeTrout v. Parker (1991), 72 Ohio App.3d 720, 723,595 N.E.2d 1015; Campco Distributors, Inc. v. Fries (1987),42 Ohio App.3d 200, 201, 537 N.E.2d 661; Whiteleather v. Yosowitz (1983),10 Ohio App.3d 272, 275, 461 N.E.2d 1331. We now turn our attention to the summary judgment proceedings in the case sub judice.
 III {¶ 16} We jointly consider both of the assignments of error as appellants assert in each of them that the Probate Court erred in awarding Margaret Blackburn summary judgment.
 {¶ 17} Appellants focus most of their arguments on a narrow part of the Probate Court's decision. The decision, however, spans thirteen pages and discusses a variety of reasons why the Court concluded that the real and personal property in question are estate assets. Appellants focus on one part of the court's decision concerning a discussion of our holding in Montgomery v.Mosley (Aug. 24, 1990), Pike App. No. 488.
 {¶ 18} In Montgomery we held that the transfer of a principal's property by an attorney-in-fact to himself or to a close relative violates the rule against self-dealing and is "barred as a matter of law." Id. While in the case at bar the Probate Court did, in fact, discuss Montgomery, we find that discussion largely superfluous to the ultimate outcome in this case. The underlying premise of the Probate Court's ruling is that the power of attorney did not authorize Jeanne Ward to make gifts and, even if so construed to permit gifts, that authorization ended by operation of law with the decedent's death. Thus, because gifts were made after the decedent's death, Jeanne Ward did not have the authority to make those gifts.
 {¶ 19} The decedent's power of attorney confers fifteen specific powers. None of those grants of authority include the power to give away the decedent's property. To the extent that this instrument could be considered a limited power of attorney, the doctrine of expressio unius est exclusio alterius (the expression of one thing means exclusion of another) weighs against finding that Jeanne Ward had the power to make gifts. To the extent that this document could be considered a general power of attorney, we note that several appellate districts have concluded that a general power does not authorize an attorney-in-fact to give away a principal's property, either to herself or to others, unless the document explicitly confers this power. MacEwen v. Jordan, Hamilton App. No. C-020431, 2003-Ohio-1547, at ¶¶ 11-12; Silcott v. Prebble, Clermont App. No. CA2002-04-028, 2003-Ohio-508, at ¶ 22; Brooks v. Bell (Apr. 10, 1998), Hamilton App. Nos. A-9602497 C-970548. In light of our concern over self-dealing as expressed in Montgomery,
supra, we are also inclined to adopt a similar rule. Either way, we agree with the Probate Court that the power of attorney in the case sub judice did not authorize Jeanne Ward to give away the decedent's assets.
 {¶ 20} Furthermore, we note that appellants face another insurmountable obstacle to their arguments. The evidentiary materials reveal that most of the transfers occurred after the decedent's death. It is well-settled that an agency relationship conferred by a power of attorney terminates with the principal's death. See McDonald v. Black's Administrator (1851),20 Ohio 185, at paragraph three of the syllabus; Santa v. Ohio Dept. ofHuman Serv. (2000), 136 Ohio App.3d 190, 193, 736 N.E.2d 86; Inre Scott (1996), 111 Ohio App.3d 273, 275, 675 N.E.2d 1350. Exceptions do, however, exist to this rule. For example, powers coupled with an interest or the application of R.C. 1337.091. Those rules do not appear to apply here.[9]
 {¶ 21} The Probate Court therefore correctly determined that, whatever authority Jeanne Ward possessed to make gifts prior to the decedent's death, that authority terminated upon his death. Thus, having determined that Jeanne Ward had no authority to make gifts, and that whatever authority she possess under that document terminated upon the decedent's death, we now turn to the individual assets at issue in this matter.
 A. The Farm {¶ 22} As noted above, we agree with the Probate Court that the power of attorney did not provide authority to Jeanne Ward to give the decedent's farm to her mother. Moreover, even if Ward possessed the authority to give away the farm, that authority terminated upon the principal's death. Although the deed was executed prior to the decedent's death on November 17, 2000, the deed was recorded after his death. Appellants argued in the trial court that the recordation date is of no consequence and that the gift was perfected when the deed was executed. We disagree.
 {¶ 23} The essential elements of a valid inter vivos gift are (1) the intent to make a gift, (2) delivery of the gift to the donee and (3) acceptance of the gift by the donee. Bolles v.Toledo Trust Co. (1936), 132 Ohio St. 21, 4 N.E.2d 917, at paragraph one of the syllabus. When the gift is real property, delivery is complete upon recording of the deed. Romaniw-Dubasv. Polowyk (Aug. 10, 2000), Cuyahoga App. No. 75980; Wood v.Wade (Aug. 14, 1986), Stark App. No. CA-6790. In the case sub judice, the uncontroverted evidence is that the deed was recorded three weeks after the decedent's death. Also, nothing appears in the record to suggest that Jeanne Ward possessed a dual agency and could act as her mother's representative to accept the deed on her behalf. Thus, no delivery of the deed occurred during the decedent's lifetime. Consequently, we conclude that no valid inter vivos gift occurred.
 {¶ 24} We also note that Patricia Groves (the donee) testified in her deposition that (1) the deed to the property was not given to her until after her uncle's death and (2) she was not aware the property was "in [her] name" until the deed was delivered. This demonstrates not only a failure of delivery during the donor's lifetime, but also the donee's failure of acceptance. The absence of delivery and acceptance show the failure of a valid inter-vivos gift. For these reasons, we conclude that the Probate Court correctly determined that the deed was null and void and that the farm is an asset of the estate.
 B. Monies withdrawn from the decedent's bank account {¶ 25} We also believe that the Probate Court correctly concluded that the monies withdrawn from the decedent's bank accounts are estate assets. Again, the power of attorney did not authorize Jeanne Ward to give the decedent's property to herself. Even if it did, however, that power terminated with her great-uncle's death. Thus, the December 4, 2000 withdraw (three days after Short's death) and December 15, 2000 withdraw (two weeks after his death) occurred without authority.
 {¶ 26} Although appellants do not make the same argument here on appeal, they did raise an interesting point in the trial court that should be addressed. Appellants suggest in their summary judgment motion that if Margaret Blackburn was entitled to keep the money she withdrew from the decedent's savings account prior to his death, Jeanne Ward should also be permitted to keep the money that she took after the decedent's death. Admittedly, we are troubled by the administrator's admission that she withdrew funds from her brother's account prior to his death. That said, the facts and circumstances of that withdraw are not before us nor have we been asked to review a judgment on that particular issue. In any event, even if Margaret Blackburn's withdraw was improper, that impropriety does not serve as an open invitation for other heirs to gather whatever assets they may marshall and nor did it justify the withdraw made in the case at bar.
 {¶ 27} For these reasons, we find no error in the Probate Court's conclusion that the $39,404.22 withdrawn by Jeanne Ward is an estate asset and must be returned.
 C. The tractor and bush hog. {¶ 28} The facts and circumstances surrounding these assets are somewhat different than the facts concerning the transfer of the farm or the withdraw of monies. The uncontroverted evidence is that the decedent purchased the Ford 4000 tractor and the bush hog, but that Jeanne Ward kept these items and had possessed them for several years prior to the decedent's death. Thus, those items are in a different category than the "gifts" that were made pursuant to the power or attorney after the donor's death. Nevertheless, the Probate Court found that these, too, are estate assets. We agree for the following reasons.
 {¶ 29} In her summary judgment motion Margaret Blackburn cited her grandson's (Robert Groves) deposition testimony that these vehicles were simply kept at Jeanne Ward's garage so that he (Groves) could maintain them and use them on the farm. Robert Groves indicated that his great-uncle still had "control" and "rights" over these vehicles and that he was not aware that the decedent intended to give them away. This is sufficient to carry the initial burden on summary judgment to show that these are estate assets and not gifts to Jeanne Ward or anyone else.
 {¶ 30} The burden then shifted to appellants to adduce evidentiary materials in rebuttal. Trout, supra, at 723;Campco Distributors, Inc., supra at 201; Whiteleather, supra at 275. We have reviewed appellant's motion for summary judgment, as well as two reply memoranda, and found virtually no mention of the tractor and bush hog in their motion and memoranda. Accordingly, we conclude that appellants failed to carry their burden of rebuttal and the Probate Court correctly determined that these items are also estate assets.
 {¶ 31} On the basis of the foregoing, we find no merit in either of the two assignments of error. Accordingly, we overrule both of the assignments of error and affirm the Probate Court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court, Probate Division, to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, P.J. Kline, J.: Concur in Judgment Opinion
[1] At the outset of these proceedings, Jeanne Ward claimed that she was not only John Ward's great-niece, but also his biological daughter as well. Later she abandoned that claim.
[2] Short was listed as the primary owner of that account. Jeanne Ward admitted that she did not deposit any of her own monies in that account.
[3] Jeanne Ward testified that these monies were placed into a joint account that she had with her mother (Patricia Groves). She further testified that, although some of the money was still in that account, some had been used to pay nursing home bills and her car loan, her son's four-wheeler loan and a home improvement loan used to build a garage.
[4] Blackburn alleged in the application that her brother died intestate. She later explained at her deposition that he preferred to die intestate so that "the kids" could "just fight over" his estate.
[5] During her deposition, Blackburn also admitted to withdrawing in excess of $31,000 from her brother's savings account. In contrast to her grand-daughter, however, she removed the funds from the account while Short was alive.
[6] Robert Groves did not join in the answer and is not a party to this appeal.
[7] Curiously, although he did not file an answer to deny the allegations, Robert Groves did join in the motion for summary judgment.
[8] This Court has consistently analyzed probate cases under the "special proceeding" prong of R.C. 2505.02(B)(2). See In reEstate of Clapsaddle (1992), 79 Ohio App.3d 747, 753-754,607 N.E.2d 1148; In re Estate of Knauff (May 27, 1997), Adams App. No. 96CA623. We continue to do so here although we acknowledge the other courts have found estate proceedings existed at common law and, thus, are not "special proceedings" as defined by statute. See generally In re Estate of Pulford (1997),122 Ohio App.3d 88, 701 N.E.2d 55; In re Estate of Endslow (Apr. 12, 2000), Delaware App. No. 99CA-F-07-37: In re Estate of Packo
(Feb. 15, 2000), Lucas App. No. L-99-1350.
[9] R.C. 1337.091(A) states that a power of attorney is not revoked on death of the principal if the attorney-in-fact acts in good faith and without knowledge of the principal's death. Here, we find is no evidence to suggest that Jeanne Ward was unaware of her great-uncle's death. Indeed, her deposition testimony tends to show that she was very aware of his death before she recorded the deed and withdrew monies from his bank accounts.