OPINION
{¶ 1} Appellant Ruby Materson appeals the May 24, 2005 Judgment Entry of the Morgan County Court of Common Pleas, Probate Division finding appellant converted $35,000.00 in estate assets. The probate court made a finding for the estate against appellant in the amount of $35,000.00 together with interest from the day after the date of decedent's death.
 STATEMENT OF FACTS AND THE CASE {¶ 2} The decedent, Kermit Weaver, died on February 18, 2001. His Last Will and Testament was admitted to probate on March 8, 2001. The decedent had four living next of kin being Ronald G. Weaver, Ruth Ann Weaver, Betty Aims, Combs, and Virginia (Jean) Titko. These are a nephew and three nieces of the decedent.
 {¶ 3} There are five residuary beneficiaries of the estate, being the four persons identified above as next of kin and appellant. Each is to receive an undivided one-fifth interest of the residuary. There are no specific bequests.
 {¶ 4} The decedent was a retired school teacher. He had sold his home in the early 1990's and thereafter lived in the home of appellant for approximately eight to ten years before his death. The appellant is a widow now age 93.
 {¶ 5} Prior to moving into the house of appellant, the decedent had a power of attorney which designated two people to act as his attorney in fact. In 1997 he executed a new power of attorney to authorize the two persons previously designated and appellant to act as his power of attorney.
 {¶ 6} In the late 1980's Ronald G. Weaver had learned that the decedent was keeping large amounts of cash in his home (the decedent was the uncle of Ronald Weaver). The decedent had kept cash because of his lack of trust of banks as a result of the Great Depression. Ronald Weaver convinced the decedent to invest in certificates of deposit, and beginning in approximately 1988 and continuing until the time he began living with appellant, he purchased CD's in his name in the approximate amount of $180,000.00. These CD's had been automatically rolled over and were still in the name of the decedent when he died.
 {¶ 7} During the period of time that the decedent lived in the home of appellant, she provided the residence and generally looked after his well being. The decedent provided some of the funds for their living existence. During the year 2000 (the last full year before the death of Kermit Weaver), he had retirement income from State Teachers Retirement System of $32,486.00 and interest income of $9,141.00, for a total of $41,627.00. Appellant worked part-time and also received a monthly Social Security check. From these funds appellant also paid part of the monthly expenses of the household.
 {¶ 8} Beginning in at least 1997 (and perhaps earlier) and continuing until the decedent's death, when the STRS checks and the interest checks were received, the decedent would give the checks to appellant who took them to one or more banks and cashed them. She used the funds for various purposes, including food, the decedent's medicines and maintenance of the house; she returned the balance of the cash received from cashing the checks to the decedent. The decedent kept the cash which was returned to him in a box under his bed. The decedent had a separate bedroom from appellant.
 {¶ 9} Appellant acknowledged that the box belonged to the decedent, that he kept it under his bed in his room, and that it was under his domain.
 {¶ 10} The will identified Betty Ann Combs and Ruth Ann Weaver to serve as co-executors. They were initially appointed by the court. On March 22, 2001, Ruth Ann Weaver asked that she be permitted to step aside due to ill health and that her brother Ronald G. Weaver be appointed as co-administrator in her stead. Betty Ann Combs also requested that Ronald G. Weaver serve as co-fiduciary with her. The appointment was granted on the same date. No bond was filed by Mr. Weaver. Appellant objected to the appointment of Ronald Weaver on January 28, 2002. The probate court did not issue a Judgment Entry addressing appellant's motion.
 {¶ 11} The fiduciaries began gathering and identifying the assets of the decedent for the purpose of filing an Inventory and Schedule of Assets in his estate. They believed that there were funds that were unaccounted. After appellant filed a Claim against the Estate for $255,711.00, the fiduciaries filed an Amended Inventory alleging that the missing funds were in the amount of $230,435.00 and that appellant had these funds. The appellant's claim was rejected by the Fiduciaries of the estate on March 11, 2002.
 {¶ 12} On March 25, 2002, Appellant filed her Complaint on the rejected claim against the Fiduciaries of the estate. The Complaint was filed in Case Number 02-C-39, Common Pleas Court, Morgan County, Ohio, Probate Division.
 {¶ 13} The fiduciaries took the deposition of appellant on November 11, 2002. During the deposition she stated that she took $35,000.00 from under the decedent's bed after he died. (Deposition T. at 22; 23).
 {¶ 14} Appellant presented evidence that sometime before he died, the decedent wrote a note which states "I have a little money and I gave it to Ruby for what she has done for me. /s/ Kermit Weaver".
 {¶ 15} By Judgment Entry filed on December 7, 2004, the court specifically made the following finding: "[t]he Court finds from prior status conferences and conversations with counsel, including the most recent pleading of Ruby Masterson, that the only issue remaining in this estate is the determination as to whether judgment should be entered in favor of the estate against Ruby Masterson for $10,000.00 plus interest or for $35,000.00 plus interest. The Court finds that all other issues herein have either been resolved or are without merit, and any other pending claims by Ruby Masterson against the estate are hereby DISMISSED and any other claims of the estate against the beneficiary Ruby Masterson are hereby DISMISSED."
 {¶ 16} The probate court conducted an evidentiary hearing on the issue on May 9, 2005, in the Meigs County Common Pleas Courtroom before The Honorable Fred W. Crow III, Judge, sitting by assignment.
 {¶ 17} The evidence admitted during this hearing established that prior to the death of the decedent, the Appellant established four (4) Certificates of Deposit at National City Bank. After the decedent's death, Appellant opened a new Certificate of Deposit at National City Bank in the amount of Ten Thousand and No/100 Dollars ($10,000.00). The parties entered into a Stipulation concerning the Certificates of Deposit of Appellant.
 {¶ 18} The probate court found in favor of the Estate and against the appellant in the amount of $35,000.00 plus interest from the day after the date of decedent's death. The court's Findings of Fact and Conclusions of Law were filed May 24, 2005. The probate court found, in relevant part: "[t]he issue before the court is the amount of money taken by Ruby Masterson, not the amount of money in her accounts. It is stated in her deposition, in direct examination, and on cross-examination that she took $35,000.00, and the direct testimony of Ruby Masterson cannot be refuted by her own attorneys . . . Inasmuch as the only testimony in regard to the amount of money in the box was given by Ruby Masterson and she consistently referred to it as $35,000.00, the court finds that there was $35,000.00 in the box under Kermit Weaver's bed at the time of his death, that the money was taken by Ruby Masterson by her own admission, that it was not returned to the estate by Ruby Masterson, and as such was converted by her to her own use. The use to which she made of the money after this conversion is not relative to this proceeding . . . Ruby Masterson has had or used the $35,000.00 since the day of her taking on February 19, 2001 (which is the day after the decedent's death). As such, Ruby Masterson owes interest to the estate on $35,000.00 at the statutory rate from February 19, 2001."
 {¶ 19} It is from the Judgment Entry filed May 24, 2005 that appellant has appealed and submits the following three assignments of error for our consideration:
 {¶ 20} "I. THE COURT COMMITTED ERROR IN APPOINTING RONALD G. WEAVER AS ADMINISTRATOR WITH WILL ANNEXED FOR THE ESTATE OF KERMIT WEAVER, DECEASED.
 {¶ 21} "II. THE COURT COMMITTED ERROR IN AWARDING JUDGMENT AGAINST APPELLANT AND IN FAVOR OF THE ESTATE OF KERMIT WEAVER, DECEASED IN THE. AMOUNT OF THIRTY-FIVE THOUSAND AND NO/100 DOLLARS ($35,000.00).
 {¶ 22} "III. THE COURT COMMITTED ERROR IN GRANTING PREJUDGMENT INTEREST FROM FEBRUARY 19, 2001, AGAINST APPELLANT."
 I. {¶ 23} In his First Assignment of Error appellant maintains that the trial court erred in appointing a successor co-fiduciary for the Estate of Kermit Weaver. We disagree.
 {¶ 24} Although appellee argues that the substitution was accomplished on the record in open court, appellee does not cite this Court to any date when said hearing took place. Nor are we able to find such a hearing date contained within the probate court's docket.
 {¶ 25} This Court has previously found that probate estate administration proceedings are not `special proceedings' within the meaning of R.C. 2505.02(A) (2) because such proceedings existed at common law: In re Estate of Endslow (Apr. 12, 2000), Delaware App. No. 99CA-F-07-37; See also, In re Estate ofPulford (1997), 122 Ohio App.3d 88, 701 N.E.2d 55; In re Estateof Packo (Feb. 15, 2000), Lucas App. No. L-99-1350; In reEstate of Adams (Dec. 30, 1999), Ottawa App. No. OT-98-047.
 {¶ 26} "However, other courts have provided equal authority to the contrary, holding that probate proceedings are `special proceedings' for purposes of R.C. 2505.02, and, assuming that the order being appealed affects a substantial right, judgments of the probate court will be considered final and appealable. In reMyers (1995), 107 Ohio App.3d 489 [669 N.E.2d 53]; In re Estateof Nussbaum (July 21, 2000), Hamilton App. No. C-990527, unreported [2000 WL 1005201]; In re Estate of Lilley (Dec. 20, 1999), Warren App. No. CA99-07-083, unreported [1999 WL 1239470]; In re Estate of Knauff (May 27, 1997), Adams App. No. 96CA623, unreported [1997 WL 305232]. Removal of a fiduciary has specifically been found appealable under this reasoning. In reEstate of Price (Oct. 26, 1995), Cuyahoga App. No. 68628, unreported [1995 WL 628344]; In re Estate of Petrosky (Nov. 17, 1987), Greene App. No. 87 CA 10, unreported [1987 WL 20259]; andIn re Putka (Mar. 1, 2001), Cuyahoga App. No. 77986, unreported [2001 WL 210027]." In re Estate of Geangel (2002),147 Ohio App.3d 131, 135-36, 768 N.E.2d 1235, 1238.
 {¶ 27} In In re Estate of Nardiello, 2001-Ohio-4080, 2001 WL 1327178, the court stated:
 {¶ 28} "The provisions of R.C. 2505.02(B) (4) specify that an order granting a provisional remedy shall be appealable if it (A) determines the action with respect to that provisional remedy and prevents a judgment in the action in the favor of the appealing party with respect to the remedy, and (B) the appealing party would not be afforded `a meaningful or effective remedy by an appeal' following a final judgment in the action as a whole. The removal of an executor, we find, falls within this category of provisional remedies for which no meaningful or effective remedy could be granted upon an appeal by an executor following final resolution of the estate, since there would no longer be any opportunity for the executor to undertake his duties and functions as executor. It is therefore on the basis of R.C.2505.02(B) (4) that we conclude that the removal of appellant as executor in the present case constitutes a final appealable order from which appellant may appeal." [Footnotes omitted].
 {¶ 29} This case persuades us that the latter approach will provide a more equitable result. In the case at bar, the successor co-fiduciary was appointed by the probate court on March 22, 2001. Notice of Appeal was filed June 20, 2005. Presumably the co-fiduciary has been carrying out his duties with respect to administration of the estate for over four (4) years. The issues in appellant's appeal are all that is left to be done to close out the estate. To remove the co-fiduciary at this late date would serve no purpose other than to conceivably deny him the compensation for the performance of his duties over the past four years.
 {¶ 30} Accordingly, we hold that an order granting or denying a motion to remove an executor of an estate is a final appealable order under R.C. 2505.02(B) (4).
 {¶ 31} Although the probate court never expressly ruled on appellant's motion to remove the successor co-fiduciary, we find that appellant has waived any argument with respect to this issue by failing to timely pursue his available remedies.
 {¶ 32} Appellant's Motion was filed with the probate court on January 28, 2002. The record reflects that over the three year period following the filing by appellant of the motion to remove the successor co-fiduciary the parties engaged in numerous pre-trials, status conferences, and even an evidentiary hearing. At no time does it appear appellant addressed the probate court to request a ruling on his motion. Nor did appellant avail himself of any extraordinary remedies to compel the probate court to rule at an earlier time. Accordingly, appellant abandoned his opposition to the successor co-fiduciary. See, e.g. State exrel. Meyers v. Columbus (1995), 71 Ohio St.3d 603, 605,646 N.E.2d 173, 174. [The elements of laches are (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party].
 {¶ 33} As noted above, the estate is complete with the exception of the issues appellant has raised in this appeal. Accordingly, nothing would be accomplished by removing the successor co-fiduciary at this late date. The successor co-fiduciary would be denied compensation for work regarding the estate that has already been performed.
 {¶ 34} Accordingly, appellant's First Assignment of Error is overruled.
 II. {¶ 35} In his Second Assignment of Error appellant argues that the probate court erred in granting judgment against appellant in the amount of $35,000.00. We disagree.
 {¶ 36} Appellant was deposed in the case at bar on November 11, 2002. The deposition was filed with the probate court on February 9, 2004. In her deposition appellant testified that she purchased two Certificates of Deposits each in the amount of $10,000.00 during the decedent's lifetime. (Deposition T. at 21-22). She further testified "Yes. Yes. And then there was thirty-five [thousand dollars] left in the box. That would make fifty-five. I don't care what anybody else says, that's the God's truth." (Id. at 222-3). Appellant reaffirmed her conviction that the box contained $35,000.00 at the time of the decedent's death during the May 9, 2005 hearing. (T. at 28-29; 33-34; 36-37).
 {¶ 37} The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact.State v. Jamison (1990), 49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881.
 {¶ 38} Reviewing courts should accord deference to the trial court's decision because the trial court has had the opportunity to observe the witnesses' demeanor, gestures, and voice inflections which cannot be conveyed to us through the written record. Miller v. Miller (1988), 37 Ohio St. 3d 71.
 {¶ 39} In Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 81, 461 N.E.2d 1273, the Ohio Supreme Court explained: "[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." See, also State v. DeHass (1967),10 Ohio St.2d 230, syllabus 1.
 {¶ 40} As an appellate court, we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v.Jeffries (February 10, 1982), Stark App. No. CA-5758. Accordingly, a judgment supported by competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.C.E. Morris Co. v. Foley Constr. (1978), 54 Ohio St. 2d 279,376 N.E. 2d 578.
 {¶ 41} In the case at bar, the probate court found that the decedent never relinquished control of the money in the box during his lifetime. To constitute a valid gift inter vivos "the donor must part, not only with the possession, but with the dominion and control, of the property. An intention to give isnot a gift, and so long as the gift is left incomplete a court of equity will not interfere and give effect to it." (Emphasis added.) Flanders v. Blandy (1887), 45 Ohio St. 108, 113,12 N.E. 321. See also Bobo v. Stansberry (2005), 162 N.E.2d 565, 573, 834 N.E.2d 373, 379. The probate court found the appellant's testimony that $35,000.00 in cash was in the box at the time of decedent's death to be credible. Based upon the record we cannot say the probate court abused its discretion.
 {¶ 42} Accordingly, appellant's Second Assignment of Error is overruled.
 III. {¶ 43} In his Third Assignment of Error appellant maintains that the probate court erred in awarding interest on the $35,000.00 award from the day after the date of decedent's death. We disagree.
 {¶ 44} In the case at bar, the probate court found that appellant had converted the $35,000.00 to her own use. (Judgment Entry, May 24, 2005 at Conclusions of Law ¶ 4).
 {¶ 45} Although, generally, Ohio common law did not allow prejudgment interest in civil actions based on tortious conduct, an action in conversion was a well-established exception to the rule. Moore v. Univ. of Cincinnati Hosp. (1990),67 Ohio App.3d 152, 154. In Lyle v. Durham (1984), 16 Ohio App.3d 1, the court discussed the common law rule for prejudgment interest from the date of conversion of a wedding band as follows at 3:
 {¶ 46} "Plaintiff's suit was in conversion, and the trial court awarded plaintiff interest from the time of the filing of the complaint. The general rule in conversion actions is that the plaintiff is awarded interest from an even earlier point, the time of conversion. Booth v. Cincinnati Finance Co. (1923),19 Ohio App. 130, affirmed (1924), 111 Ohio St. 361; Morris v.Pearl Street Auction Co. (1939), 61 Ohio App. 452 [15 O.O. 283]. The trial court made no error prejudicial to defendant, and did not abuse its discretion, in choosing the filing of the complaint as the time from which to calculate the interest. CincinnatiIns. Co. v. First Natl. Bank of Akron (1980), 63 Ohio St.2d 220, 226."
 {¶ 47} "An analysis of the conversion exception to the common law rule in light of R.C. 1343.03 was explained in GM GasExploration, supra, at 2-3 as follows: `R.C. 1343.03(C) indicates that interest on a judgment based on tortious conduct may be computed from the date the cause of action accrued to the date of payment. In order to obtain an award of prejudgment interest under R.C. 1343.03(C), a party must file a motion with the court for prejudgment interest. The court must determine at a hearing that the party required to pay the money failed to make a good faith effort to settle the case while the prevailing party in fact did so. R.C. 1343.03(D) creates an exception to the procedure outline in R.C. 1343.03(C) if a different period for computing interest is provided by law. In the present case, R.C.1343.03(D) provides for an exception to the procedure prescribed in R.C. 1343.03(C), as is discussed in greater detail below.
 {¶ 48} `* * *
 {¶ 49} `Ohio courts have long recognized that the common law provides that interest in actions based upon the tortious conversion of personal property may run from the time of the conversion. See Wozniak v. Wozniak (1993), 90 Ohio App.3d 400,412, appeal dismissed (1994) Ohio St.3d 1440; Moore v. Univ. ofCincinnati Hosp. (1990), 67 Ohio app.3d 152, 154; Lyle v.Durham (1984), 16 Ohio App.3d 1, 3; Morris v. Pearl StreetAuction Co. (1939), 61 Ohio App. 452. In Wozniak and Moore,
supra, the courts recognized that his common law right to prejudgment interest was in addition to the right to prejudgment interest contained in R.C. 1343 .03(C). In light of R.C.1343.03(D), we agree.
 {¶ 50} `When prejudgment interest is awarded in a conversion action, pursuant to the common law, the date for the calculation of the interest remains in the sound discretion of the trial court. Wozniak, supra, at 412. Thus, such an award will not be reversed in the absence of an abuse of discretion on the part of the trial court. Id; Lyle, supra, at 3. An abuse of discretion is characterized by action on the part of the trial court that is arbitrary, unreasonable or unconscionable. State v. Xie (1992),62 Ohio St.3d 521, 527'". Persky, supra.
 {¶ 51} We concur with this analysis of the issue and therefore do not read R.C. 1343.03 to preempt the common law interest rule on conversion claims. Rather, we believe the award of prejudgment interest on conversion claims is determined by the trier of fact to be necessary in the form of compensatory damages to make the plaintiff whole. See, DeSantis v. Smedley (1986),34 Ohio App.3d 218.
 {¶ 52} An award of prejudgment interest on a conversion claim is within the trial court's discretion as part of the compensatory award. We have no basis for finding an abuse of discretion by the trial court in awarding interest from the date of conversion on the $35,000.00 award.
 {¶ 53} Appellant's Third Assignment of Error is overruled.
 {¶ 54} For the foregoing reasons, the judgment of the Morgan County Court of Common Pleas is affirmed.
Gwin, P.J., Farmer, J., and Boggins, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Morgan County Court of Common Pleas is affirmed. Costs to appellant.