[Cite as *Colaprete v. Morris*, 2013-Ohio-3899.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| RONALD S. COLAPRETE | JUDGES:<br>Hon. W. Scott Gwin, P. J. |
| Plaintiff-Appellant | Hon. John W. Wise, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 2013CA00031 |
| MARTIN J. MORRIS, et al. | |
| Defendants-Appellees | O P I N I O N |


CHARACTER OF PROCEEDING:    Civil Appeal from the Court of Common
Pleas, Case No.  2012CV01088


JUDGMENT:    Affirmed


DATE OF JUDGMENT ENTRY:    September 9, 2013


APPEARANCES:

For Plaintiff-Appellant

ROY H. BATISTA
4808 Munson Street, NW
Canton, Ohio  44718

For Defendant-Appellees

JASON BING
Post Office Box 2985
North Canton, Ohio  44720

*Wise, J.*

**{¶1}** Appellant Ronald S. Colaprete appeals the January 29, 2013, decision of the Stark County Common Pleas Court affirming the Magistrate's Decision.

## STATEMENT OF THE FACTS AND CASE

**{¶2}** The relevant facts are as follows:

**{¶3}** In 1996, Appellant Ronald Colaprete entered into an agreement with Appellee Paul Morris for the rental of two storage units (Unit 1 and Unit 2) owned by Appellees Paul Morris and Martin Morris. The storage units were located at the Morrises' rental facility on Harmont Ave. Although labeled as Unit 1 and Unit 2, the storage units were not physically separated and essentially comprised one large storage unit.  The initial rental price for the storage units was $350.00 per month. By 2010, the rental price for the storage units had increased to $450.00 per month. Colaprete and Paul Morris entered into a written lease agreement for the storage units. However, neither party can produce a copy of such agreement.

**{¶4}** Throughout their business relationship, Colaprete would go for months without paying rent on Units 1 and 2, but would make large payments to satisfy any arrears and often advance payments on the units. This practice was accepted by Paul Morris until April 2011, when Colaprete was $3,350.00 behind in rental payments.

**{¶5}** Paul Morris notified Colaprete that he needed to make his payments current or he would be locked out of the units. Upon his failure to make his rental payments current, Colaprete was locked out of Units 1 and 2 in April 2011.

**{¶6}** At the time of the lockout, Appellees took items, without Colaprete's permission, from Units 1 and 2 and sold them as scrap, for which they received $3,054.00.

**{¶7}** Although Colaprete was locked out of Units it and 2, Colaprete continued to have items stored in these units until September, 2012.

**{¶8}** Colaprete did not make any rental payments for the continued storage of the items in Units t and 2.

**{¶9}** At the time he was locked out of Units 1 and 2, a 1978 Ford Thunderbird in excellent condition and a 1982 Lincoln Continental in above-average condition were stored in the units. The value of such vehicles was $7900.00 and $2550.00, respectively.

**{¶10}** On April 5, 2012, Plaintiff filed a pro se Complaint against Defendants Martin J. Morris, Paul R. Morris, Morris Brothers, Non Ferrous and Morris Rentals. Colaprete's Complaint contained one count for conversion seeking $129,226.61 in damages.

**{¶11}** On May 7, 2012, Defendant Morris Rentals filed an Answer and Counterclaim and all Defendants filed a Motion to Dismiss the Complaint.

**{¶12}** On June 11, 2012, Plaintiff filed a Response to the Motion to Dismiss.

**{¶13}** On June 12, 2012, the trial court denied the Motion to Dismiss.

**{¶14}** On July 19, 2012 the remaining Defendants filed their Answers.

**{¶15}** On August 13, 2012 the matter was for trial on September 24, 2012. Plaintiff at this point engaged counsel.

**{¶16}** On September 27, 2012, a bench trial commenced before a magistrate. At the trial, the magistrate heard testimony from Appellant Colaprete and Appellees Paul Morris and Martin Morris.

**{¶17}** Subsequent to the trial, Appellant and Appellees each filed their respective post trial memorandums and/or briefs pursuant to the trial court's instructions.

**{¶18}** On October 31, 2012 the Magistrate rendered her Judgment and Finding of Fact and Conclusions of Law. As to Appellees' counterclaim for breach of contract, the Magistrate found in favor of Appellees, awarding damages in the amount of $10,100.00, plus interest. On Appellant's conversion claim, she found that appellees took items belonging to Appellant without his permission. She found the measure of damages to be the scrap value received by Appellees, $3,054.00. On Appellant's negligence claim, she found that Appellees breached their duty of care by damaging and destroying Appellant's stored vehicles, and awarded damages in the amount of $10,450.00.

**{¶19}** On November 13, 2012, Plaintiff filed his objections to the Magistrate's ruling of October 31, 2012.

**{¶20}** On January 29, 2013, Judge Sinclair by Judgment Entry affirmed the Magistrate's Decision and Orders.

**{¶21}** It is from this decision that Appellant now appeals, assigning the following errors for review:

## ASSIGNMENTS OF ERROR

{¶22} "I. THE COURT COMMITTED ERROR IN NOT GRANTING INTEREST ON THE JUDGMENTS IN FAVOR OF THE PLAINTIFF AGAINST THE MORRIS DEFENDANTS."

{¶23} "II. THE COURT COMMITTED ERROR IN FINDING THAT THE DAMAGES PROVEN AT TRIAL IN RESPECT TO CONVERTED PROPERTY WAS THE AMOUNT RECEIVED BY THE MORRIS DEFENDANTS BY SCRAPPING THE PROPERTY OF THE PLAINTIFF.

{¶24} "III. THE COURT COMMITTED ERROR IN MAKING A CONCLUSION OF LAW NO. 31, THAT PLAINTIFF BREACHED THE CONTRACT OF RENTAL WHEN HE FAILED TO MAKE RENTAL PAYMENTS IN FULL FROM SEPTEMBER, 2010 THROUGH SEPTEMBER, 2012 WHICH IS INCONSISTENT WITH THE FINDING OF FACT 12 AND 13, THAT "THROUGHOUT THEIR BUSINESS RELATIONSHIP COLAPRETE (PLAINTIFF) WOULD GO MONTHS WITHOUT PAYING RENT ON UNITS 1 AND 2 BUT WOULD MAKE LARGE PAYMENTS TO SATISFY ANY ARREARS AND OFTEN ADVANCE PAYMENTS ON THE UNITS," AND "THIS PRACTICE WAS ACCEPTED BY PAUL MORRIS UNTIL APRIL, 2011, WHEN COLAPRETE WAS $3,350.00 BEHIND IN RENTAL PAYMENTS.

{¶25} "IV. THE COURT COMMITTED ERROR IN AWARDING THE DEFENDANTS RENT FOR THE PERIOD OF APRIL, 2011 TO SEPTEMBER, 2012, FOR THE REASON THAT THE CONDUCT OF DEFENDANTS IN DESTROYING AND SCRAPPING THE PLAINTIFFS PERSONAL PROPERTY STORED ON THE

PREMISES AND LOCKING THE PLAINTIFF OUT IN APRIL, 2011, WAS EFFECTIVELY AN EJECTMENT."

**I.**

{¶26} In his First Assignment of Error, Appellant argues that the trial court erred in failing to grant interest on the judgments. We disagree.

{¶27} Although Ohio common law did not generally allow prejudgment interest in civil actions based on tortious conduct, an action in conversion was a well-established exception. *Moore v. Univ. of Cincinnati Hosp.* (1990), 67 Ohio App.3d 152, 154, 586 N.E.2d 213; *Masterson v. Weaver*, Morgan App. No. CA-05-014, 2006-Ohio-1069; *Persky, Shapiro, Salim, Esper, Arnoff & Nolfi Co., L.P.A. v. Guyuron* (Dec. 14, 2000), Cuyahoga App. No. 77249. "Ohio courts have long recognized that the common law provides that interest in actions based upon the tortious conversion of personal property may run from the time of the conversion." *GM Gas Exploration, Inc. v. McClain* (Oct. 17, 1995), Athens App. No. 95CA1651. However, the precise date for the calculation of the interest remains in the sound discretion of the court. *Wozniak v. Wozniak* (1993), 90 Ohio App.3d 400, 412, 629 N.E.2d 500; *Lyle v. Durham* (1984), 16 Ohio App.3d 1, 3, 473 N.E.2d 1216; *Oak Furniture Showroom, Inc. v. Normandy Pointe Assoc.* (June 26, 1998), Montgomery App. No. 16816; *In re: Guardianship of Cawein* (Nov. 1, 1995), Hamilton App. No. C-940885; *GM Gas Exploration; Call v. Banc Ohio Natl. Bank* (Apr. 11, 1994), Crawford App. No. 3-93-21.

{¶28} In his prayer for relief, Appellant sought "[j]udgment in the sum of $129,226.61, plus costs, and, ask [sic] the court for punitive damages, caused because of Defendant's wrongful conversion for their own benefit." The prayer for relief did not

seek a specific award for prejudgment interest, nor did the remainder of Appellant's complaint expressly seek prejudgment interest. Failure to include prejudgment interest in the prayer for relief operates as a waiver of such a claim. *Salvi v. Dunbar* (Dec. 23, 1993), Franklin App. No. 93AP-1059; *G & S Mgmt. Co. v. Commercial Union Ins. Cos.* (June 3, 1993), Franklin App. No. 92AP-1429.

{¶29} Moreover, even if Appellant's complaint were sufficient to raise prejudgment interest, there is no evidence in our record indicating that Appellant ever raised the issue of prejudgment interest to the trial court.

{¶30} Appellant's First Assignment of Error is overruled.

II.

{¶31} In his Second Assignment of Error, Appellant argues that the trial court erred in its determination of damages. We disagree.

{¶32} The measure of damages in a conversion action is the value of the converted property at the time it was converted. *Tabar v. Charlie's Towing Serv.,* 97 Ohio App.3d 423, 427-428, 646 N.E.2d 1132 (8th Dist.1994). Put another way, the general measure of damages for conversion is the fair market value of the item at the time it was converted. *Allied Erecting & Dismantling Co., supra*, at ¶ 62. "An award of damages must be shown with a reasonable degree of certainty and in some manner other than mere speculation, conjecture, or surmise." *Elias v. Gammel,* 8th Dist. No. 83365, 2004–Ohio–3464, at ¶ 25. Damages are not speculative when they can be "computed to a fair degree of probability." *Allied Erecting & Dismantling Co.* at ¶ 65.

{¶33} An appellate court will not disturb a trial court's determination of damages absent an abuse of discretion. *Roberts v. United States Fid. & Guar. Co.* (1996), 75 Ohio St.3d 630, 634, 665 N.E.2d 664.

{¶34} An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983). When reviewing for an abuse of discretion, an appellate court may not merely substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.,* 66 Ohio St.3d 619, 621 (1993).

{¶35} In the case *sub judice*, the magistrate heard testimony from both sides as to the value of the converted property. After hearing such evidence, the magistrate in her Findings of Fact and Conclusions of Law found:

{¶36} "Aside from the value received by Morris Defendants for materials they scrapped and the destroyed vehicles, this Magistrate finds that Colaprete has failed to demonstrate the value of any other items that might have been destroyed or scrapped by the Morris Defendants"

{¶37} " ***

{¶38} "Although Colaprete submitted a detailed list of the items contained in Units 1 and 2 along with his opinion of the value of each, this Magistrate finds such self-serving evidence unpersuasive and that the value of the property is accurately reflected by the value received by Morris Defendants in scrapping the items."

{¶39} When conflicting evidence is susceptible to more than one interpretation, evaluating witness credibility is a controlling factor, and left to the trier of fact who is in

the best position to make that determination. We cannot say the fact-finder clearly lost its way. There is competent, credible evidence supporting the trial court's decision.

**{¶40}** Appellant's Second Assignment of Error is overruled.

III.

**{¶41}** In his Third Assignment of Error, Appellant argues that the trial court erred in finding that Appellant breached the rental contract in this matter. We disagree.

**{¶42}** In order to succeed on a breach of contract claim, the plaintiff must demonstrate that: (1) a contract existed; (2) the plaintiff fulfilled his obligations; (3) the defendant breached his obligations; and (4) damages resulted from this breach. *Chaney v. Ramsey,* 4th Dist. No. 98CA614, 1999 WL 217656, *5 (Apr. 7, 1999), citing *Doner v. Snapp,* 98 Ohio App.3d 597, 600, 649 N.E.2d 42 (2nd Dist.1994). " '[B]reach,' as applied to contracts is defined as a failure without legal excuse to perform any promise which forms a whole or part of a contract, including the refusal of a party to recognize the existence of the contract or the doing of something inconsistent with its existence." *Natl. City Bank of Cleveland v. Erskine & Sons, Inc.,* 158 Ohio St. 450, 110 N .E.2d 598 (1953), paragraph one of the syllabus. " 'When the facts presented are undisputed, whether they constitute a performance or a breach of a written contract, is a question of law for the court.' " *Koon v. Hoskins,* 4th Dist. No. 95CA497, 1996 WL 30018, *7 (Jan. 24, 1996), fn. 5, quoting *Luntz v. Stern,* 135 Ohio St. 225, 20 N.E.2d 241 (1939), paragraph five of the syllabus.

**{¶43}** Here, Appellant argues that the parties had entered in a course of dealing wherein Appellees would accept late storage fee payments from Appellant. Appellant

often went months without paying rent and then would become current by making a large payment.

**{¶44}** The failure of a lessor to object in a timely manner to a breach of a lease agreement constitutes a waiver, estopping the lessor from setting up the breach as a basis for terminating the lease. *Finkbeiner v. Lutz* (1975), 44 Ohio App.2d 223, 226-227, 337 N.E.2d 655, 657-658. In that case, the lessor accepted late payments from the lessee for nine years so he waived the right to assert that the latest late payment breached the lease. The court stated:

**{¶45}** "Where a course of conduct is engaged in between the parties to a lease, which acts are contrary to specific provisions therein, such conduct will speak for itself, and the parties will be estopped from denying that conduct and its immediate logical consequences." *See also Habegger v. Paul,* Wood App. No. WD-03-038, 2004-Ohio-2215 (objection not timely where it occurred fourteen months after alleged breach); *Galaxy Dev. v. Quadax, Inc.,* Cuyahoga App. No. 76769 (landlord was prohibited from collecting holdover rent because it accepted the original rental payment amount for seventeen months after the lease expired).

**{¶46}** Here, the trial court agreed that the parties had engaged in this practice until April, 2011, when Appellees notified Appellant that he was $3,350.00 behind in rental payments, and that if he did not make his payments current he would be locked out of the storage units.

**{¶47}** Paul Morris testified that Appellant was notified on more than one occasion that he needed to bring his rent current and keep it current, and that failure to do so would result in being locked out of his storage unit. Mr. Morris testified that the

last time he told Appellant this was in September, 2010. He said they continued to make calls to him in November, 2010, and December, 2010, and again in March, 2011, but stated that the calls were never returned. He further testified that upon being locked out of the storage unit, Appellant called and was told that he needed to make his rental payments current immediately or lose his stored property. Mr. Morris stated that they waited another couple of weeks before emptying the storage unit of some of its contents. (T. at 103-106).

**{¶48}** A judgment supported by some competent, credible evidence will not be reversed as against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578. A reviewing court does not decide whether it would have come to the same conclusion as the trial court. Rather, we are required to uphold the judgment so long as the record, as a whole, contains some evidence from which the trier of fact could have reached its ultimate conclusions. *Hooten Equipment Co. v. Trimat, Inc.,* Gallia App. No. 03CA16, 2004–Ohio–1128, ¶ 7. We are to defer to the findings of the trier of fact because the trier of fact is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the testimony. *Seasons Coal Company, Inc. v. City of Cleveland* (1984), 10 Ohio St.3d 77, 461 N.E.2d 1273. We may not substitute our judgment for that of the trier of fact. *Pons v. Ohio State Medical Board* (1993), 66 Ohio St.3d 619, 614 N.E.2d 748.

**{¶49}** Based on the foregoing, we find that the trial court did not err in finding that Appellant breached his rental storage agreement with Appellees.

**{¶50}** Appellant's Third Assignment of Error is overruled.

IV.

**{¶51}** In his Fourth Assignment of Error, Appellant argues that the trial court erred in awarding rent to Appellees. We disagree.

**{¶52}** Specifically, Appellant argues that the Appellees actions in locking him out of his storage unites constituted an ejectment and therefore Appellees should not have been awarded rent for the period of time Appellant was locked out of the leased premises.

**{¶53}** Appellant argues that the Magistrate's Findings of Fact 18 and 19 were erroneous, wherein she found:

**{¶54}** "18. Although he remained locked out of Unit 1 and 2, Colaprete continued to store items in the Units until September, 2012.

**{¶55}** "19. Colaprete did not make rental payments for the continued storage of the items in Units 1 and 2."

**{¶56}** Upon review, we find that from April, 2011, to September, 2012, Appellees were unable to rent the two storage units which are the subject of this action because they still contained Appellant's personal items.

**{¶57}** Testimony was presented at trial that the parties reached an agreement allowing Appellant to remove whatever was remaining in the storage units. (T. at 116). Appellant testified that he did return and had retrieved some of his items, such as the vehicles, remaining in the storage units but that he did not remove everything. (T. at 56). He further stated that he wanted those items which were still stored in the units. *Id.*

**{¶58}** As set forth above, a judgment supported by some competent, credible evidence will not be reversed as against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578.

**{¶59}** Based on the foregoing, we find that the trial court did not err in awarding rent to Appellees for the time period of April, 2011, to September, 2012.

**{¶60}** The decision of the Court of Common Pleas of Stark County, Ohio, is affirmed.

By: Wise, J.

Gwin, J., and

Baldwin, J., concur.

_____

HON. JOHN W. WISE

_____

HON. W. SCOTT GWIN

_____

HON. CRAIG R. BALDWIN

JWW/d 0827

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


RONALD S. COLAPRETE                         :
                                            :
    Plaintiff-Appellant                     :
                                            :
-vs-                                        :            JUDGMENT ENTRY
                                            :
MARTIN J. MORRIS, et al.                    :
                                            :
    Defendants-Appellees                    :            Case No. 2013CA00031


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.

Costs assessed to Appellant.


_____
HON. JOHN W. WISE


_____
HON. W. SCOTT GWIN


_____
HON. CRAIG R. BALDWIN